IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff**<br><br>v.<br><br>FRANCISCO FURIEL RAMOS-DOMÍNGUEZ,<br><br>**Defendant** | CRIM. NO. 23-223-1 (RAM) |

## OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is the United States of America's (the "Government") *Motion for Stay and Revocation of Bail Order or for Stay of Bail Order and Request for De Novo Bail Hearing*. (Docket No. 71). The motion for stay was denied as moot, and the motion for a *de novo* bail hearing was granted. (Docket No. 72). Accordingly, the sole remaining issue is the Government's motion for revocation of bail order ("*Motion*"). For the reasons set forth below, the Court **DENIES** the Government's *Motion*. The Defendant is to remain on bail subject to the conditions specified in the order of release at Docket No. 78.

### I.   BACKGROUND

On September 6, 2023, a Grand Jury in this district returned a superseding indictment charging Francisco Furiel Ramos-Domínguez ("Defendant" or "Ramos-Domínguez") and two co-defendants with conspiracy to possess with intent to distribute cocaine, in

violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count One) and possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Counts Two and Three). (Docket No. 52).

On September 21, 2023, Magistrate Judge Giselle López-Soler held a detention hearing and found that there were conditions of release that would reasonably assure the Defendant's future appearance and the safety of the community, including bond, the surrender of Defendant's passport, home detention, and the installment of an electronic monitoring device. (Docket No. 76).

That same day, the Government filed the present *Motion* seeking *de novo* review of the Magistrate Judge's detention order. (Docket No. 71). Mr. Ramos-Domínguez opposed the *Motion*, arguing that a *de novo* hearing was unwarranted and that, in any case, he should not be detained because he is neither a flight risk nor a danger to the community. (Docket No. 83). Defendant also submitted exhibits supporting his motion. (Docket Nos. 83-1, 83-2, and 83-3). The Court declined to vacate the hearing, which was held on October 2, 2023. (Docket Nos. 86 and 87).

At the evidentiary hearing, Mr. Ramos-Domínguez called his father, Francisco Ramos-Martinez, who testified about his ability to serve as a third-party custodian of the Defendant. The Government proceeded by proffer and argued both flight risk and

danger to the community. Defendant argued to the contrary. The parties requested that the Court also consider exhibits, evidence, and arguments previously submitted to Magistrate Judge López-Soler or filed on the docket.

After considering the evidence and the arguments of the parties, as well as the transcript of the initial detention hearing, the Court finds that defendant has introduced sufficient evidence to rebut the 18 U.S.C. § 3142(e)(3) presumption and that the Government has not proven by the relevant standards that no conditions of release could reasonably assure the safety of the community and Defendant's appearance as required.

## II. LEGAL STANDARD

### A. Standard of review for a detention or release order

A district court reviews a magistrate judge's order of detention or release under a *de novo* standard and "need not defer to the magistrate judge's findings or give specific reasons for rejecting them." United States v. Cidraz-Santiago, 18 F. Supp. 3d 124, 126 (D.P.R. 2014) (citations omitted). A district court may also "take additional evidence or conduct a new evidentiary hearing" when "the defendant has placed relevant facts at issue." Id.

**B. The Bail Reform Act**

Pursuant to the Bail Reform Act of 1984, a judicial officer must determine whether a person charged with an offense shall be detained or released pending trial. *See* 18 U.S.C. § 3142(a). Section 3142(e) of the Bail Reform Act provides that if, after conducting a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other persona and the community, such judicial officer shall order the detention of the person before trial." Id. § 3142(e).

      i.   Standard of proof

The standard of proof for detention on the grounds of dangerousness is **clear and convincing evidence**. Id. § 3142(f). Clear and convincing evidence is "more than preponderance of the evidence but less than beyond a reasonable doubt." United States v. Acevedo-Ramos, 600 F. Supp. 501, 509 (D.P.R. 1984) (citations omitted), *aff'd*, United States v. Acevedo-Ramos, 744 F.2d 203 (1st Cir. 1985) (Breyer, J.). This standard requires "a high degree of certainty that the information presented supports the conclusion of dangerousness or risk to the obstruction of justice." Id. On the other hand, the standard of proof for detention on the grounds of risk of flight is preponderance of the evidence. United States v. Patriarca, 948 F.2d 789, 793 (1st Cir. 1991).

### ii. Factors the Court must consider

To determine whether there are conditions of release that assure a defendant's appearance and the safety of the community, judicial officers must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's personal history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 4152(g).

### iii. The 18 U.S.C. § 3142(e) presumption

18 U.S.C. § 3142(e) creates a rebuttable presumption that no conditions can reasonably assure the appearance of the defendant and the safety of the community where there is probable cause that a defendant has committed one of the crimes listed in the statute or in the other circumstances set forth therein. United States v. Vargas-Reyes, 220 F. Supp. 3d 221, 225 (D.P.R. 2016) (citing 18 U.S.C. § 3142(e)(3)). A grand jury indictment alone suffices to trigger the presumption. Id. (citing, *inter alia*, United States v. Vargas, 804 F.2d 157, 163 (1st Cir. 1986)).

In cases involving drug trafficking crimes, the presumption comes from "Congress's finding that drug traffickers often have the resources and foreign contacts to escape to other countries" and that "[f]orfeiture of even a large bond may be just a cost of

Criminal No. 23-223-1 (RAM)                                                6

doing business, . . . hence drug traffickers pose special flight risks." United States v. Palmer-Contreras, 835 F.2d 15, 17 (1st Cir. 1987); *see also* United States v. Dillon, 938 F.2d 1412, 1416-17 (1st Cir. 1991) (noting appellant-defendant remained risk of flight where drug organization "probably could absorb the loss of $200,000 worth of security"); United States v. Perez-Franco, 839 F.2d 867, 870 (1st Cir. 1988) (gravity of charges and non-citizen status makes the risk of flight pronounced); United States v. Jessup, 757 F.2d 378, 385 (1st Cir. 1985) (reviewing the evidence before Congress that drug offenders pose particular flight risk), *partially abrogated on other grounds by* United States v. O'Brien, 895 F.2d 810 (1st Cir. 1990).

Once triggered, the 18 U.S.C. § 3142(e)(3) presumption imposes on the defendant a burden of production. *See* Vargas-Reyes, 220 F. Supp. at 225. The defendant may satisfy the burden of production by introducing at least some evidence contrary to the facts presumed. Id. For that reason, "[t]he burden is not heavy." Id. Notably, the burden of persuasion always rests with the Government in both presumption and non-presumption cases. Id.

However, the 18 U.S.C. § 3142(e)(3) presumption does not simply vanish once a defendant has produced some evidence. *See* Palmer-Contreras, 835 F.2d at 18; Jessup, 757 F.2d at 383-84, 387. Instead, judges must keep the presumption in mind as an additional

factor to the four listed in Section 3142(g). *See* Palmer-Contreras, 835 F.2d at 18; Jessup, 757 F.2d 383-84, 387. In drug trafficking cases, the weight afforded to the presumption depends on how closely the defendant resembles the paradigmatic drug trafficker for whom the risk is particularly high; "the less those features resemble the congressional paradigm, the less weight the [court] will likely give to Congress's concern for flight." Jessup, 757 F.2d at 387; *see also* Palmer-Contreras, 835 F.2d at 18; Perez-Franco, 839 F.2d at 870.

### III. DISCUSSION

#### A. The nature and circumstances of the offense charged

Mr. Ramos-Domínguez was indicted on three counts of drug trafficking offenses. (Docket No. 52). Here, the presumption comes from 18 U.S.C. § 3142(e)(3)(A), *i.e.*, probable cause to believe that Defendant committed "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act[.]" Given the severity of the punishment provided by the relevant statutes, this factor favors detention. However, as the Court will discuss, the remaining factors favor release.

#### B. The weight of the evidence against Defendant

The Government purports to have evidence that Defendant supervised between twenty-five and forty drug mules and coordinated the trafficking of at least 300 kilograms of cocaine

from Puerto Rico to the continental United States. Specifically, the Government has seized several kilograms of cocaine, has information provided by a co-conspirator who assisted in the drug mule scheme, and has found incriminating electronic evidence on the Defendant's cell phone. This electronic evidence includes photos of bulk cash, videos depicting several kilos of cocaine apparently taken from inside Mr. Ramos-Domínguez's home, and audio messages discussing airport conditions and possible sentences. Finally, the Government proffered that agents found cocaine packaging material in Defendant's car when he was arrested.

In response, Defendant argued before the Magistrate Judge that photos of cash are not inherently illegal. (Docket No. 89 at 29). He further noted that some of the videos shown by the Government did not actually feature his voice or were taken from the devices of co-defendants and therefore did not implicate him. Id.

Regardless of the import or weight of the evidence proffered by the Government, the Court is not concerned with Mr. Ramos-Domínguez's guilt or innocence at this stage. *See* 18 U.S.C. § 3142(j) ("Nothing in this section shall be construed as modifying or limiting the presumption of innocence."). The Court's task is to assess whether there is a set of conditions that "will reasonably assure the appearance of the person as required and the

safety of any other person and the community." 18 U.S.C. § 3142(c). The Court agrees with the Magistrate Judge that such conditions exist.

## C. Defendant's personal history and characteristics

The third factor—Defendant's personal history and characteristics—also favors release pending trial. Defendant is a lifelong resident of Puerto Rico. He is married with two young children, and he resides in a home owned by his father, who lives close by. Mr. Ramos-Domínguez's sisters attended both his initial detention hearing, (Docket No. 89 at 5), and the *de novo* hearing. Defendant's father, Mr. Ramos-Martinez, testified at both hearings that he operates several businesses in Puerto Rico and employs Mr. Ramos-Domínguez at one of the car dealerships he owns. Defendant carries a U.S. passport, and he traveled to Spain in May and June 2023 with his family and coworkers. At the initial bail hearing, defense counsel proffered that federal agents had interviewed Mr. Ramos-Domínguez at the airport gate while he was departing to Spain, but he nonetheless returned to Puerto Rico when the trip concluded and therefore did not represent a risk of flight. Id. at 23-24. Finally, Defendant has no prior recorded criminal history.

In support of its argument that Defendant is a risk of flight, the Government avers the following. First, it argues that Mr. Ramos-Domínguez has access to vast wealth, both from his father's

business and from his own drug trafficking. For example, the Government proffered that in July 2023, law enforcement seized eighty kilograms of cocaine at the Luis Muñoz Marin International Airport linked to the Defendant, and that this amount of cocaine would have a street value of approximately $1.2 million. Second, the Government further proffered, without elaborating further, that Defendant had extensive underworld contacts in the Dominican Republic.

Defendant has established he has strong community ties to Puerto Rico, rebutting the presumption under 18 U.S.C. § 3142(e). See United States v. Newton, 215 F.3d 1313 (1st Cir. 2020) (defendant's evidence of family and business ties to Puerto Rico, no prior criminal convictions, and compliance with pretrial release conditions sufficient to rebut presumption). While the Government's motion and proffer did focus on the fact that the Defendant may have access to significant financial assets, its argument as to foreign contacts is under-developed. Further, the fact that Defendant returned from a foreign country even after federal agents purportedly interviewed him and seized his phone evinces willingness to remain in the jurisdiction. Finally, the Government previously conceded to the Magistrate Judge that an electronic monitoring device could "may well address" concerns regarding the risk of flight. (Docket No. 89 at 21). Accordingly,

the Court finds that the Government did not meet its burden of persuasion that Defendant is a risk of flight.

### D. The nature and seriousness of the danger to any person or the community that would be posed by Defendant's release

The Government made several arguments as to Defendant's potential to be a danger to the community if released. First, it argued that Defendant's involvement with drug trafficking has led to violent incidents, including a shooting at one of his father's car dealerships in March 2023. In support of this argument, the Government presented a video showing the damage to the dealership along with a message purportedly from the Defendant assigning blame for the shooting: "this was the creditors."[1] (Docket No. 71). However, Mr. Ramos-Martinez testified that the road near the dealership is often dark at night and vandals have previously shot at his business and those of his neighbors. In corroboration, Defendant also submitted translated Puerto Rico Police Department reports of two previous shootings that occurred in April 2020 and November 2021. (Docket Nos. 90-1 and 90-3, respectively).

Second, the Government argues that despite the March 2023 dealership shooting and the arrest of one of his co-defendants in May 2023, Mr. Ramos-Domínguez continued to traffic large

---

[1] The original message is in Spanish, and in relevant part says: "eso fueron los cobradores". (Docket No. 77).

quantities of cocaine through the airport as recently as July 19, 2023.

Third, the Government avers that Mr. Ramos-Domínguez told agents when he was arrested that if word of his arrest got out, people would come for his family and would kidnap his father.

Fourth, the Government states that a search of Defendant's phone yielded evidence that he spoke about burning another individual's car as part of a drug dispute, information which was independently corroborated by a witness.

Notably, the Government did not present any evidence at all as to the latter three arguments. In this case, Defendant did not object to the Government proceeding by proffer at either detention hearing. However, at the hearing before the Magistrate Judge, the Government could not state when the videos it presented—including the video of the aftermath of the dealership shooting—were taken. (Docket No. 89 at 14). As noted above, Defendant also claimed that it was not his voice that was featured in the video. Although the Court may rely on hearsay evidence at detention hearings, the hearsay itself needs to be sufficiently reliable. Acevedo-Ramos, 755 F.2d at 208. Further, the Government did not present police reports, affidavits, testimony, or any other evidence that Defendant poses a continuing threat to public safety. Accordingly, the Government has not met its burden to establish by clear and

convincing evidence that there is no condition or combination of conditions that would reasonably assure the safety of other persons and the community.

The Court notes that the Government raises serious concerns, and drug trafficking itself is a serious offense. However, "the safety of the community can be reasonably assured without being absolutely guaranteed." United States v. Tortora, 922 F.2d 880, 884 (1st Cir. 1990) (citing United States v. Orta, 760 F.2d 887, 891-92 (8th Cir. 1985) (en banc)). The Court has considered the conditions imposed by Magistrate Judge López-Soler's order of release, and notes that, among other requirements, the Defendant must be detained at home and wear an electronic monitoring device. Together, the conditions of release can reasonably assure public safety.

> i. Whether Government proffers alone may establish clear and convincing evidence of dangerousness

Although not dispositive in this case because the Government did submit some evidence and Defendant did not object to the Government's proffer, the Court is skeptical that the Government can meet its burden to establish dangerousness by clear and convincing evidence solely through a proffer. In its motion for a *de novo* hearing, the Government argued that it is "entitled to present evidence by way of proffer," citing to 18 U.S.C. §

Criminal No. 23-223-1 (RAM)                                                14

3142(f)(2). (Docket No. 71 at 3). However, the Bail Reform Act contains no language permitting prosecutors to proceed by proffer alone. In relevant part, Section 3142(f) notes that **a person charged with an offense**:

> has the right to be represented by counsel, and, if financially unable to obtain adequate representation, to have counsel appointed. The person shall be afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear at the hearing, and **to present information by proffer or otherwise**. The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing.

18 U.S.C. § 3142(f) (emphasis added). The statute is silent as to whether the Government may proceed by proffer—and indeed, it makes no mention of how the Government is to present evidence at all. In other words, the plain text of the statute permits defendants to proceed by proffer in detention hearings, but it does not expressly grant the same privilege to the Government. Section 3142(f) further makes clear that the "**facts** the judicial offer uses to support a finding" of dangerousness "shall be supported by clear and convincing **evidence**." Id. (emphasis added).

However, a "proffer is not evidence, *ipso facto*[,]" United States v. Reed, 114 F.3d 1067, 1070 (10th Cir. 1997), and is instead an offer of evidence. *See* PROFFER, Black's Law Dictionary (11th ed. 2019) (defining the verb proffer). The plain text of

section 3142(f) suggests a proffer cannot establish the facts needed for the Government to meet its evidentiary burden. Additionally, the negative implication canon "*expressio unius est exclusion alterius*"—roughly translated as "the expression of one thing is the exclusion of other things"—is directly applicable to section 3142(f) and precludes the Government's ability to proceed by a proffer alone. *See* United States v. Hernandez-Ferrer, 599 F.3d 63, 67-68 (1st Cir. 2010) (applying the "venerable" negative implication canon to statute that neither expressly required nor expressly permitted tolling a term of supervised release when offender was in fugitive status). Because Congress was silent as to whether the Government could proceed by proffer, but nonetheless clarified—in a sentence pertinent to both the Government and the defense—that the rules of evidence would not apply to detention hearings, application of the negative implication canon results in the conclusion that the Government must support its detention argument regarding dangerousness with at least some evidence.

The First Circuit has previously addressed the evidentiary requirements of the Bail Reform Act in Acevedo-Ramos. In that case, the Government **did** present evidence—the testimony of a federal agent, along with supporting documentation—and the First Circuit's holding, as relevant here, was that judicial officers could use reliable hearsay to support their detention orders. Acevedo-Ramos,

Criminal No. 23-223-1 (RAM)                                               16

755 F.2d at 207. In so holding, the First Circuit noted that the Bail Reform Act's legislative history shows Congress intended to retain the informal nature of bail hearings, which included proceeding by proffer. Id. at 206, 208. These comments regarding proffers, while relevant, are dicta. Moreover, Acevedo-Ramos appears to contemplate judicial officers being presented with actual evidence that might contain hearsay. Id. at 207. A subsequent unpublished opinion[2] in this circuit held that the Government may proceed solely by proffer, but the decision to detain in that case was almost entirely based on the defendant's risk of flight and failure to rebut section 3142(e)'s presumption. United States v. Femia, 983 F.2d 1046 (table), 1993 WL 5893, at *3-*6 (1st Cir. 1993). The Court further notes that there is persuasive authority from outside the circuit that supports the proposition that the Government cannot proceed by proffer alone when it seeks to detain the defendant on grounds of danger to the community. *See* United States v. Martir, 782 F.2d 1141, 1145-47 (2d Cir. 1986); United States v. Suppa, 799 F.2d 115, 118 (3d Cir. 1986).

---

[2] Unpublished opinions may be considered "for their persuasive value" but are not "binding precedent." First Circuit Rule 32.1.0(a); *see* Narragansett Indian Tribe v. Rhode Island, 449 F.3d 16, 29 n.8 (1st Cir. 2006) (an unpublished opinion "has no precedential force").

### IV.  CONCLUSION

For the foregoing reasons, the Court ORDERS that the Government's *Motion for Revocation of Bail Order* is **DENIED**. The Defendant shall remain under the same conditions specified in the order of release at Docket No. 78.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 13th day of October 2023.

s/Raúl M. Arias-Marxuach
UNITED STATES DISTRICT JUDGE
